**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEXANDER PETRACEK,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No.  2:25-CV-1894-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c); see also ECF Nos. 7, 8, and 9.  Pending before the Court are the parties' briefs on the merits, ECF Nos. 11 and 18.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

1

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1     Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2     If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3     If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

/ / /

2

Step 4    If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5    If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on November 16, 2022. See CAR 17.[1] In the application, Plaintiff claims disability began on July 15, 2022. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on November 7, 2024, before Administrative Law Judge (ALJ) K. Kwon. In a December 23, 2024, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1.    The claimant has the following severe impairment(s): anxiety disorder; bipolar disorder; and post-traumatic stress disorder (PTSD);

2.    The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.    The claimant has the following residual functional capacity: the claimant can perform a full range of work at all exertional levels; the claimant can understand, remember, and apply simple instructions; the claimant can maintain concentration, persistence, and pace for simply work; the claimant is limited to no more than occasional interaction with the public, coworkers, and supervisors; and the claimant is limited to no more than occasional changes in the routine work setting;

4.    Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 21-28.

After the Appeals Council declined review on June 10, 2025, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]    Citations are to the Certified Administrative Record (CAR) lodged on September 3, 2025, ECF No. 10.

4

### III.  DISCUSSION

In his opening brief, Plaintiff argues: (1) the ALJ failed to provide sufficient reasons to discount the opinions of treating psychiatrist Dr. Samuel Wu; and (2) the ALJ failed to follow the special procedures for evaluation of mental impairments.  See ECF No. 11, pg. 2.

Plaintiff also raises a third issue he captions "Credit as True Doctrine."  Id. at 14.  According to Plaintiff:

> The ALJ is required to address Petracek's credibility according to the standards set for[th] at 20 C.F.R. § 404.1529. The ALJ cannot reject the claimant's testimony about the severity of his symptoms without offering specific, clear and convincing reasons for doing so. If it is clear from the administrative record that the ALJ would be required to award benefits if the claimants … (symptom) testimony was credited. The Court will not remand to allow the ALJ to make specific findings regarding the testimony. "Rather, we will … take that testimony to be established as true." *Varney v. Health & Human Servs.*, 859 F. 2d 1396, 1401 (9th Cir. 1988) (Varney II). This credit-as-true doctrine discourages ALJ's from "concluding first and then attempting to justify it by ignoring competent evidence in the record that suggests an opposite result" *Garrison v. Colvin,* 759 F.3d 995 (9th Cir. 2014). Here, Petracek has provided testimony which has not been contradicted. His doctor's reports support his testimony.

> ECF No. 11, pg. 14.

Plaintiff's argument is entirely conclusory.  Plaintiff has not provided any analysis of the ALJ's findings regarding Plaintiff's subjective statements.  Nor has Plaintiff offered any specific argument based on the record supporting a conclusion that the ALJ improperly evaluated his subjective statements and testimony such that the Court could conclude that the credit-as-true doctrine should apply in this case.  The Court, therefore, concludes that no issue with respect to evaluation of Plaintiff's subjective statements and testimony is properly raised in this case.

#### A.     **Evaluation of Dr. Wu's Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

/ / /

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c. These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source. See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]"). Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources. See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr.

6

30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness." See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)). Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be." See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)). "For consistency, the regulations state: '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)). "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

In this case, the ALJ evaluated several medical opinions of record at Step 4. See CAR 30-35. As to Dr. Wu, the ALJ stated as follows:

> Dr. Wu offered multiple functional assessments. In January of 2023, he opined that the claimant has "poor" ability in performing activities within a schedule, maintaining regular attendance, completing a normal workday and workweek without interruptions from mental symptoms, and responding appropriately to chances in work setting, while adding that the

7

claimant has "fair" ability in understanding, remembering, and carrying out even "complex" instructions, maintaining concentration, attention, or persistence, and interacting appropriately with the public, coworkers, and supervisors (Ex. 5F). Thereafter in October of 2024, Dr. Wu even more restrictively opined that the claimant is "unable to meet competitive standards" or has "no useful ability to function" in numerous work-related mental functional particulars, including maintaining regular attendance, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being distracted, performing at a consistent pace without an unreasonable number and length of rest periods, completing a normal workday and workweek without interruptions from mental symptoms, accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in work setting, carrying out detailed instructions, making plans independently of others, and dealing with normal work stress (Ex. 11F). He added that the claimant is "seriously limited" in a number of additional mental functional particulars, including in remembering work-like procedures, being aware of normal hazards, maintaining attention for two-hour segments, understanding and remembering detailed instructions, and making even "simple" work-related decisions (Id.). Dr. Wu further opined that the claimant is expected to be absent from work for "more than four days" in any given work month due to his impairments (Id.). The undersigned finds Dr. Wu's particular assessments (as made in January of 2023) of "fair" abilities in interacting appropriately with the public, supervisors, and coworkers and in maintaining concentration, attention, or persistence largely persuasive, while deeming the remainder of his opinions issued in January of 2023 and October of 2024 non-persuasive. There is notable inconsistency between them, for example with regard[] to Dr. Wu's assessment of "fair" social interaction ability as made in January of 2023 versus his opinion regarding inability to "meet competitive standards" in getting along with coworkers/peers without undue distraction or exhibition of behavioral extremes. Regardless, Dr. Wu's own longitudinal progress notes, while at times referencing abnormal affect, dysphoria, or irritability (and reflecting observation of poor insight/judgment on isolated occasion), otherwise generally reflect reporting of linear and goal-oriented thought process, unremarkable thought content, fair judgment and insight, calm and cooperative behavior, good eye contact, fair grooming and hygiene, normal psychomotor activity, and endorsed "ok" mood (see, e.g., Ex. 5F/22, 25-26; Ex. 9F/2, 11, 22, 31, 38). That evidence largely supports his assessments (from January of 2023) regarding fair abilities in workplace social interaction and maintaining concentration, attention, or persistence, but does not support the remainder of Dr. Wu's severely limiting opinions issued in January of 2023 and October of 2024. Further, the claimant has variously acknowledged driving a vehicle, shopping in stores, preparing meals "daily," playing video games (including on a typical day), going on his phone "throughout the day," attending AA meetings, going to church, and hanging out with friends (Ex. 5E/4-7; Hearing Testimony). Those activities and abilities are inconsistent with all of the above-described and extremely restrictive mental functional assessments made by Dr. Wu (including with regard to, but not limited to, off task behavior, workplace absences, and workplace social interactions). Moreover, Dr. Wu's severely limiting mental functional assessments are otherwise inconsistent with the

8

balance of the medical and non-medical evidence, which is instead most consistent with the above-listed mental residual functional capacity for the reasons previously discussed in evaluating the administrative medical findings of Dr. Sen and Dr. Leizer.

CAR 31-32.

Plaintiff's argument, in its entirety, is as follows:

The ALJ provides the following reasons to discount Psychiatrist Wu, reports and evaluations that there is inconsistency between each of his evaluations. The ALJ does not explain why she believes the evaluations would be the same when they are concerned with different time periods. It is given that bipolarity results in wide mood swings. The signs and symptoms during one period would be expected to be different.

Dr. Wu's 2024 assessment consolidates his condition as waxing and waning during different time periods. As such, evaluations over two-year periods cannot be negated because Mr. Petracek's condition became worse. As such, the ALJ has not provided any reasons to discount [Dr. Wu] and erred by not giving his opinion great weight.

ECF No. 11, pgs. 13-14.

The Court does not agree.  First, contrary to Plaintiff's assertion that the ALJ failed to explain why evaluations from separate time periods (January 2023 and October 2024), the ALJ explained that the differing accounts of Plaintiff's abilities are inconsistent with the doctor's own longitudinal progress notes, which are in line with the 2023 assessment and do not support the more limiting 2024 assessment.  The ALJ also noted that the more limiting 2024 assessment is inconsistent with Plaintiff's stated activities of daily living.  Second, the ALJ appropriately noted that Dr. Wu's 2024 assessment is inconsistent with the other medical opinions of record, specifically those provided by Drs. Sen and Leizer.  The Court finds that the ALJ's evaluation of Dr. Wu's opinions compiles with the revised regulations and is supported by substantial evidence.

    B.    **Evaluation of Mental Impairments**

        In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations.  See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Where there is a

colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure. See 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The ALJ is required to record pertinent findings and rate the degree of functional loss. See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

With respect to the ALJ's evaluation of mental impairments, Plaintiff raises two arguments. First, Plaintiff argues that ALJ failed to consider the "paragraph C" criteria for serious and persistent mental disorders. See ECF No. 11, pgs. 7-9. Second, Plaintiff argues that the ALJ erred with respect to the "paragraph B" criteria in finding less than marked limitations in the areas of (a) understanding, remember, or applying information, (b) interacting with others, (c) concentration, persistence, or pace, and (d) managing oneself. See id. at 9-11.

### 1.    Paragraph B Criteria

The ALJ addressed the "paragraph B" criteria as follows:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> The first functional area is understanding, remembering, or applying information. In his Function Report, the claimant alleged that his memory and understanding are affected by his impairments. He asserted that he follows written instructions "terribly" and added that he is "even worse" at following spoken instructions. The claimant further alleged that he needs help with bills and bank account(s). Regardless, the claimant reported that he can count change and indicated that he attends Bible study at times. He further acknowledged driving a vehicle (Ex. 5E). Driving requires a working memory and knowledge of the rules of the road and the ability to interpret traffic signals and road signs. In December of 2022 (as reported in a medical source statement the following month), the claimant's regular psychiatrist (Dr. Wu) observed moderately impaired recent and remote memory but also estimated the claimant's intelligence as "average" (Ex. 5F/6). Regardless, there is other reporting of clinician observations of "normal" memory and cognition (Ex. 10F/25). During the hearing, the claimant responded appropriately to questions. The undersigned finds that the claimant is mildly to moderately limited in understanding, remembering, or applying information.
>
> The next functional area is interacting with others. In his Function Report (completed in late December of 2022), the claimant asserted that he has problems getting along with family, friends, neighbors, or others,

10

narratively adding that "mood swings can cause relational issues." He added, "I don't' hang out with people very often due to anxiety and lack of motivation." Regardless, the claimant reported getting along with authority figures "well," and denied any history of being fired or laid off due to problems getting along with others. He further reported spending time with others, including in person and by phone, texting, and video chat. The claimant also reported attending church weekly, shopping in stores, and attending Alcoholics Anonymous meetings (Ex. 5E). During a clinic visit in late October of 2022 (shortly prior to the claim application filing date, but after the original alleged onset date of disability), the claimant used "good" eye contact (Ex. 5F/25). At a clinic visit in April of 2023, the claimant reported that his hobbies included "attending meetings" (Ex. 9F/30). The following month, he reported "attending meetings twice a week and church once a week" (Ex. 9F/27). During the same psychiatric clinic visit, the claimant added that he "does have friends at the meetings [who] he spends time with" (Id.). Over two different days featuring contact with a community service team member in September of 2024, the claimant variously presented as kind, calm, friendly, and wiling to engage (Ex. 8F/3-4). During the hearing, the claimant interacted with the undersigned (a virtual stranger and authority figure) and his representative without apparent difficulty. The undersigned finds that the claimant is no more than moderately limited in interacting with others.

The third functional area is concentrating, persisting, or maintaining pace. In his Function Report, the claimant alleged that his abilities to concentrate and complete tasks are affected by his impairments. He asserted that he can pay attention for "very short time spans" and that he does not finish what he starts. Regardless, the claimant reported that he can count change and indicated that he attends Bible study at times. He further acknowledged driving a vehicle. The claimant additionally indicated that on a typical day, he will "play video games" and "go on my phone throughout the day" (Ex. 5E). These reported activities and abilities require varying but significant degrees of sustained attention and concentration. During a psychiatric clinic visit in late October of 2022 (shortly prior to the claim application filing date), the claimant used "good" eye contact (Ex. 5F/25). At another psychiatric visit in December of 2022, the claimant was observed as only "slightly" distracted (Ex. 5F/6). In late April of 2023, the claimant reported having no current hobbies "other than **playing video games** and attending meetings" (emphasis added) (Ex. 9F/30). During the hearing, the claimant responded appropriately to questions. He testified that he spends 3-4 hours per day online, including in surfing the internet and using Instagram and Facebook. The claimant further testified that he plays video games for 30-40 minutes per day. The undersigned finds that the claimant has no more than moderate limitation in concentrating, persisting, or maintaining pace.

The fourth functional area is adapting or managing oneself. In his Function Report, the claimant asserted that "hate[s]" handling changes in routine, adding, "[the] same routine is needed." The claimant alleged that he does not shave as often and skips brushing teeth "due to lack of motivation and added that he needs to be reminded to eat, while reporting "ok" abilities to dress, bathe, use the toilet, and care for hair. The claimant asserted that he needs reminders to take care of personal needs and grooming, and that he "sometimes" needs reminders to take medicine.

11

Regardless, he acknowledged engaging in various household chores and other activities involving laundry, trash, bathroom cleaning, daily meal preparation, shopping in stores, playing video games, attending church (and at times, Bible study), spending time with others including friends, going to Alcoholics Anonymous meetings, and driving a vehicle (Ex. 5E). At his consultative internal medicine evaluation in mid-March of 2023, the claimant reported being "fully able to care for his personal needs," while adding that he "can episodically complete his activities of daily living depending on [his] mental health diagnoses" (Ex. 6F/2). The claimant has variously presented with adequate or better grooming, or as well-nourished or well appearing, over a number of longitudinal (see, e.g., Ex. 3F/27; Ex. 4F/8; Ex. 5F/22; Ex. 9F/1, 18, 34, 38; Ex. 10F/11). Additionally, over his longitudinal medical history, the claimant has repeatedly demonstrated the ability to inform medical professionals or community support personnel of his current symptom complaints or needs as well as details regarding his past medical or personal history (see, e.g., Ex. 4F/7; Ex. 6F/2-3; Ex. 8F/3-4; Ex. 9F/14, 27, 30; Ex. 10F/19). During the hearing, the claimant testified that he plays video games and uses the internet daily as previously discussed. The undersigned finds that the claimant is no more than moderately limited in ability to adapt or manage himself.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

CAR 24-26.

Plaintiff argues that the ALJ erred with respect to three of the four "paragraph B" functional areas – understanding, remembering or applying information; interacting with others; managing oneself; and concentration, persistence, or pace. Each of Plaintiff's specific arguments is addressed below.

      i.      Understanding, Remembering, or Applying Information

Relying on Dr. Wu's October 2024, assessment, Plaintiff argues that the ALJ's finding that Plaintiff is mildly to moderately limited in this area is not consistent with the record and the "ALJ has not provided evidence to negate Psychiatrist Wu's evaluation." ECF No. 11, pg. 10. The Court does not agree. As discussed above, the ALJ properly gave Dr. Wu's October 2024 assessment little weight because it is inconsistent with the doctor's own treating notes, because it is inconsistent with Plaintiff's activities of daily living, and it is inconsistent with other medical opinions of record.

///

///

12

ii.    Interacting with Others and Managing Oneself

Plaintiff addresses these areas of functioning together, arguing as follows:

> The ALJ provides similar reasoning for both limitations. The ALJ states Mr. Petracek has moderate limitations because he uses attending church, shopping in stores and attending AA meetings (AR 26). He is recorded with good eye contact when he went to social services. However, the ALJ does not resolve the conflict between the psychiatric evaluation and the ALJ's findings. Psychiatrist Wu's finds extreme limitations in persisting and adapting and marked limitations getting along with others.
>
> The nature of bipolarity is it waxes and wanes. For instance, Mr. Petracek tied up a woman with shoestrings believing she had stolen his wallet and ran up his credit cards. He believed that he was being attacked. As such the ALJ has not resolved this conflict in the record, and this factor is not supported by evidence.
>
> ECF No. 11, pgs. 10-11.

Plaintiff again relies on Dr. Wu's 2024 report and argues that the ALJ's finding that Plaintiff is only moderately limited in these areas of functioning conflicts with Dr. Wu's assessment and the ALJ has failed to explain the conflict. See id.  As discussed above, the Court finds that the ALJ's analysis of Dr. Wu's 2024 opinion is adequately explained under the revised regulations and supported by substantial evidence.  Plaintiff's argument is thus unpersuasive.

iii.    Concentration, Persistence, or Pace

Relying further on Dr. Wu's findings, Plaintiff contends:

> The ALJ states again that driving a car and attending bible study and playing video games show concentrating, persisting and being able to pace. The ALJ does not resolve the conflict between her findings and Dr. Wu who found marked and extreme limitations in those areas. Mr. Petracek's mother states that his memory and ability to follow basic instructions erode his ability to concentrate. As such, the ALJ has not resolved the conflict in the record as to concentrating persisting or maintaining pace (AR 572). As such the ALJ has not provided reasonable factors to find moderate limitations. Therefore, the ALJ's finding is not supported by substantial evidence.
>
> ECF No. 11, pg. 11.

For the reasons discussed above regarding the ALJ's evaluation of Dr. Wu's opinions, the Court finds Plaintiff's argument as to concentration, persistence, and pace is also unpersuasive as it relies on Dr. Wu's opinions from 2024 which were properly given less weight.

/ / /

2.    Paragraph C Criteria

To meet the "paragraph C" criteria, the claimant must show a serious and persistent mental disorder that lasts over a period of at least two years, and evidence of both of the following: (1) medical treatment, mental health therapy, psychological support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (2) minimal capacity to adapt to changes in environment or to demands that are not already part of the claimant's daily life.  See 20 C.F.R. pt. 404, subpt. P, app 1, § 12.04C.

As to the "paragraph C" criteria, the ALJ stated as follows:

The undersigned has also considered whether the "paragraph C" criteria of listings 12.04, 12.06, or 12.15 are satisfied. In this case, the record fails to establish the presence of the "paragraph C" criteria. In particular, the evidence does not persuasively show that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that not already part of the claimant's daily life (see 12.00G2c).

CAR 26.

Challenging this analysis, Plaintiff contends:

The ALJ has not provided detail as to the application as to Mr. Petracek's case. Mr. Petracek was awarded disability from 2014 to 2020 because he met 12.04(c) (AR 116). This factor has not been addressed by the ALJ. It is reasonable to assume that because Mr. Petracek was unable to support himself, he was unable to handle the pressure. He has been committed under 5150 twice from 2022 to 2024. The ALJ is required to resolve this conflict in the evidence. As such, the ALJ failed to explain the paragraph C determination. Therefore, the ALJ's findings are not supported by substantial evidence.

ECF No. 11, pgs. 8-9.

As Defendant notes, Plaintiff's argument misstates the evidence.  See ECF No. 18, pg. 5.  Contrary to Plaintiff's assertion that he was "committed under 5150 twice," the record shows that Plaintiff was hospitalized only one time in 2007 when Plaintiff was 14 years old – 15 years before the relevant time period in this case.  See CAR 36, 38, 467.  To the extent Plaintiff was previously awarded benefits from 2014 to 2020, that time period is not at issue in this case given Plaintiff's allegation in the current disability application that he became disabled in July 2022.

///

14

### IV.  CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment, ECF No. 11, is denied;

2.    Defendant's motion for summary judgment, ECF No. 18, is granted;

3.    The Commissioner's final decision is affirmed; and

4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated:  July 2, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

15